Paul L. **BROWN**, Plaintiff-Appellant,

v.

**LIVE OAK STONE COMPANY** et al.,
Defendants-Appellees.

No. 27934.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1970.

Elliott Adams, Jacksonville, Fla., for appellant, Adams & Adams, Jacksonville, Fla., of counsel.

J. D. Raye, Jacksonville, Fla., for Live Oak Stone Co.

John E. Norris, Lake City, Fla., for appellee, Daniel Blake, Brannon, Brown,

---

such a case, "malice" would be inferred from the commission of the felony. See generally 1 Wharton, Criminal Law and Procedure § 251 (1957).

8. *Cf.* Stevenson v. United States, 162 U.S. 313, 315, 16 S.Ct. 839 (1896); Irby v.

United States, 101 U.S.App.D.C. 19, 246 F.2d 706 (1957) (per curiam).

9. See *Stevenson, supra,* 162 U.S. at 315, 16 S.Ct. 839.

Norris, Vocelle & Haley, Lake City, Fla., of counsel.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

PER CURIAM:

This case reaches us from deep seated rivalry between three shareholders of a close corporation. Proof that self-help is not always the most economical, the rivalry is the result of lay-drafted agreements and actions taken under or in apparent disregard of these agreements. Not a really significant question of law is involved and even much less will be the precedential value of this decision.

Originally, this was a dispute between three shareholders—Shepard, Brown and Blake. But one of the claimants (Shepard) was declared to be a non-shareholder in a separate prior suit between the three claimants. Thus before us remain only the two survivors, Brown and Blake. In adjudicating their rights to the stock, we affirm the District Court by following a slightly different course, Continental Oil Co. v. London Steam-Ship Owners' Mutual Insurance Ass'n, 5 Cir., 1969, 417 F.2d 1030, 1033, and hold that Paul Brown and Daniel Blake are equal shareholders in Live Oak Stone Company (LOS).

The internal handling of LOS Company becomes important to this case on March 15, 1956. Before that time the holdings of the stock in the company were:

|  | Shares |
|---|---|
| Shepard | 2300 |
| Blake | 150 |
| Brown | 300 |
|  | 2750 |

But on that date the stockholders by written resolution instructed the secretary to issue Blake 100 shares "previously allocated to him" and to accept his note for $11,500 as consideration for the 1000 shares and the 150 shares previously issued. Whether the note was ever executed and delivered by Blake was one of the hotly disputed fact issues. The Judge found that it was, and it was undisputed that the additional 1000 shares were never issued.

In the same resolution Brown was given an option to purchase an additional 700 shares at $10.00 per share. It is without dispute that this option was never exercised.

Now the problem begins, the mystery deepens. For apparently satisfactory reasons it was mutually decided that Shepard should retire from company ownership. To carry this out LOS on March 19, 1959 formally agreed in writing to purchase the 2300 shares held by Shepard, giving as consideration two corporate notes totaling $123,000. Pursuant to the agreement one of the notes, for $100,000, was endorsed and guaranteed by Brown and Blake, the other, for $23,000, was guaranteed by an outside party. These notes were secured by Shepard's 2300 shares, Brown's 300 shares, and Blake's 150 shares, which were delivered to an independent escrow agent.[1] The agreements provided two further things. First, "that stock in said corporation will be held by them [Brown and Blake] equally and that any stock issued should be issued in such manner that the parties hereto will continue to own said corporation equally." Second, the contemporaneous escrow agreement provided, among other things, that when the debt to Shepard was repaid by the corporation, the 2300 Shepard shares held in escrow were to be reissued so that Blake and Brown would own equal shares. Where once there were three there were soon to be two.[2]

1. It is deserving of a parenthetical footnote to remark that no reference was made to the 1,000 additional shares Blake claims he acquired under the March 15, 1956 resolution.

2. Parenthetically Brown claims that this agreement of March 19, 1959 superseded the resolution of March 15, 1956, but he does so only so that he can consistently claim that the next agreement of April

Now the enigma is added to the mystery, for on April 21, 1960 Shepard got back into the act when the directors, Shepard, Brown and Blake, without the slightest mention of the March 19, 1959 agreement, formally resolved and instructed the escrow agent that when all the present corporate obligations had been paid, ⅓ of the stock should be returned to Shepard for certain considerations and the other ⅔ split evenly between Blake and Brown. Once again there were to be three.

Between this time and December 23, 1964 the three men apparently began to have problems for on that date Shepard gave notice that LOS' note was in default and that he was going to enforce the collateral pledge. On January 21, 1965 Brown, liable with Blake as an endorser, after unsuccessfully demanding that the corporation make payment, forestalled the move by paying the $64,606.46 principal and interest due on the note and received the note. But he did not get the stock pledged as collateral.

Troubles and disagreements continued and the transactions found their way to the courthouse when, on March 21, 1967, the Federal District Court below declared in a related, but separate, action that Shepard had no right to any of the stock since he had repudiated and breached the April 21, 1960 agreement. The Court held that Brown had a right to his 300 shares and Blake owned 150 shares and that Brown recover $64,606.-46 plus interest and attorney's fees from LOS. That Court specifically did not determine (1) Blake's right to the 1000 shares issued pursuant to the March 15, 1956 agreement or (2) the rights of Blake vis-a-vis Brown under the March 19, 1959 agreement.

On May 25, 1967 Brown filed this declaratory judgment action in the same Court to determine these rights. The Trial Judge decreed that Blake be issued an additional 1000 shares upon paying $11,500 plus interest from March 16,

1956,[3] that Brown be issued 850 shares upon payment of $8500 with interest from March 19, 1959, that all the stock be held by Brown as security for the $64,606.46 obligation of LOS to him, and that he and LOS be enjoined from selling any of this stock until all other assets had been exhausted.

The Trial Judge took the route of the 1956 resolution as the basis for affording Blake 1150 shares. On his fact finding of the execution and delivery of the note this would be acceptable. But his conclusions leave unanswered just how Brown is to attain his "equality" since Brown does not contend that he exercised the 1956 option.

In the light of the actions of the parties and especially the agreements of 1959 and 1960 which become increasingly enigmatic for failure expressly to take account of the prior agreements, we think it preferable for the rights of both to rest upon the 1959 or 1960 agreements. Following this course it matters not whether we use the April 21, 1960 agreement or the March 19, 1959 agreement. Using the ⅓-⅓-⅓ April 1960 agreement, which Shepard had breached, the two remaining parties under that agreement, who had been 50–50 owners since March 19, 1959, remain equal owners (⅓ each) and should divide the spoils equally. The result is the same therefore as though the March 19, 1959 agreement were applicable. We reject the notion that Shepard's breach of the 1960 agreement somehow left Brown, by subrogation or otherwise, as the owner of Shepard's former third to thereby give him two-thirds.

Synthesizing these successive transactions as best we can, it is plain that as between Brown and Blake they were to be equal. With Shepard out of the way the two were left as 50/50 owners. There is no indication, however, that either was to benefit to the detriment of the other so the District Court was clearly correct in according Brown the

---

21, 1960 in turn superseded the March 19, 1959 agreement.

3. The Court held as a fact Blake had executed and delivered his note in 1956.

opportunity to pay for 850 shares (to bring his holding to 1150) since Blake is to be issued 1000 shares (to bring his total to 1150).

It bears emphasis that the corporation still owes Brown $64,606.46 plus interest and attorney's fees pursuant to the judgment in the prior case and expressly reiterated in this case. To assure that the equities will be attained and the burden will be borne by the equal shareholders equally, the cause will be remanded for appropriate supervision and governance by the District Court.

Affirmed and remanded.